

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

April 21, 2022

**BY ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
Daniel Patrick Moynihan U.S. Courthouse
New York, New York 10007

Re:   *United States v. May Salehi*, 21 Cr. 577 (JSR)

Dear Judge Rakoff:

On April 8, 2022, the Court sentenced defendant May Salehi to 12 months' imprisonment, three years of supervised release, forfeiture of $60,000, a fine of $500,000, and no restitution. At the conclusion of the sentencing proceeding, the Court directed each party to submit a letter regarding the defense's objections to the Probation Office's final Presentence Investigation Report (Dkt. 18 ("PSR")). The Government respectfully submits this letter in response to the defense's letter setting forth its PSR objections, which is dated April 15, 2022 (Dkt. 25 ("Def. PSR Objs.")).

1. **PSR ¶ 18**

The defense requests that the following sentence be stricken from the PSR:

> Thus, the State Department informed bidders that the lowest technically acceptable bid would win the contract, and that the expected scope was between $5.5 million and $7.5 million.

The defense's objection should be overruled. The existing sentence is accurate, relevant, and fully supported by the record, including an exhibit attached to the Government's sentencing letter. *See, e.g.*, Dkt. 20 (Govt. Sent. Letter), **Ex. D** ("TOPR"), at 2 ("The successful bidder on this TOPR will be the company that offers the lowest priced, technically acceptable offer to carry out the work described in the Statement of Work and attachments for the task order."); *see also id.* ("The order of magnitude for this project is estimated to be between $5,500,000.00 and $7,500,000.00 USD.").

The defense has also requested that certain language be added to the existing ¶ 18. The Government has no objection to adding a footnote stating, "There were two subsequent amendments to the solicitation, one of which extended the due date for bids." Beyond that modest change, however, the defense's proposed additional language is irrelevant, unnecessary, confusing, and, to an extent, misleading. The purpose of ¶ 18 is to summarize what was conveyed to

prospective bidders in July 2016; the existing paragraph does so accurately. The defense's attempt to include (in ¶ 18) the Independent Government Estimate ("IGE")—which is an *internal* government benchmark that was *not* conveyed to bidders during the bidding process—would paint a confusing, somewhat misleading portrait; it would import inside information into a paragraph that is exclusively focused on what was conveyed externally to prospective bidders.

### 2. PSR ¶ 22

The defense next requests that the following two sentences be stricken:

> In September 2016, the State Department's employees evaluating cost (as distinct from the technical component) determined that all five remaining bids were within "the competitive range" but were below the Independent Government Estimate, which is an internal State Department estimate regarding the cost of the project. Accordingly, the State Department gave these five bidders the opportunity to re-bid, if they wished, though they were not required to do so.

The defense's objection should be overruled. These sentences—and the broader paragraph in which they are situated—are accurate, relevant, and fully supported by the record, including the defendant's own statements and several defense sentencing exhibits. *See*, *e.g.*, Dkt. 24-2 (Plea Tr.) p. 24 (defendant explained that the procurement process involved "two separate components"—technical review and cost review); *see also* Dkt. 19 (Def. Sent. Mem.), Def. Exs. 8-12 (each of five technically acceptable bids was "within the competitive range" but below the IGE; and each bidder had an opportunity to submit a revised bid, if it wished); Def. Ex. 6, pp. 4-5 (Price Negotiation Memorandum states: "The five offerors, which submitted technically acceptable proposals, in this task order competition were included in the competitive range. Discussions were necessary to go over the scope to ensure that the offeror in the competitive range fully understands the general conditions, labor requirements, and overall project as well as the challenges of operating in Bermuda.").

The defense has proposed alternate language based exclusively on one document in the record, but the existing language in the PSR accurately summarizes the entirety of the record, including the one document highlighted by the defense. Accordingly, the defense's objection should be overruled.

### 3. PSR ¶ 30

The Government has no objection to adding "Gain/" to the section header, so that it instead reads: "Gain/Loss Calculations Under the Sentencing Guidelines". The remainder of the defense objection, however, should be overruled.

First, the defense requests that the Court strike the entirety of ¶ 30, which reads as follows:

> The net gain to Montage was approximately $1,492,820. This is the sum of two numbers: $917,820 plus $575,000. The first number, $917,820, is the amount that Montage immediately raised its bid due to SALEHI's inside information. The second number, $575,000, is a conservative estimate of Montage's projected profit for the duration of the contract. The Government's profit estimation is based on Montage's own quarterly financial report of a profit of $883,025, and an in-house worksheet of estimated profits of $887,358. The Government noted that it cannot establish higher profit numbers due to Montage engaging in rampant fraud, and that included fabricating documents, identities, owners, numbers, and reasons. As such, the Government has used the lowest available profit estimate of $575,000.

This existing paragraph is accurate, relevant, and fully supported by the record. The defense does not contest the $575,000 estimate for projected profit, but does dispute the $917,820 figure.[1] As noted in the Government's prior submissions to the Court, Montage, Inc. ("Montage") was going to win the Bermuda Project with its original $5.3 million bid—a bid that it had reaffirmed just a few days before Salehi supplied inside information to Montage's owner, Sina Moayedi. Montage's $5.3 million bid was the lowest priced, technically acceptable bid—and the State Department had already made clear that it would award the Bermuda Project to "the lowest priced, technically acceptable offer". Dkt. 20 (Govt. Sent. Letter), **Ex. D**, at 2 (TOPR) ("The successful bidder on this TOPR will be the company that offers the lowest priced, technically acceptable offer…."). Moreover, Montage's original $5.3 million offer was within "the competitive range," which is reserved for the "most highly rated proposals." *Id.* Thus, Salehi's inside information enabled Montage to remain the lowest bid—but milk another $917,820 out of the State Department. That $917,820 is plainly part of Montage's "benefit" from this conspiracy offense; that is why Moayedi was willing to pay Salehi $60,000 in return. *See* U.S.S.G. § 2C1.1(b)(2) (noting that the "benefit received or to be received in return for the [illegal] payment" is one measure of gain under this Guideline); *see also* U.S.S.G. § 2C1.1, Application Note 3, Example A.

In lieu of the existing, accurate language, the defense proposes new language that alleges, in part, that "neither net gain nor net loss has been established." Dkt. 25, at 2. That is simply untrue. Montage increased its bid nearly $1 million, immediately after Salehi told Moayedi that his bid was about $1 million lower than his competitors' bids—*i.e.*, Moayedi could raise his bid by about $1 million, but remain the lowest bid and therefore win the Bermuda Project, but at a much more favorable price for him and a much less favorable price for the Government. That is plainly "benefit" to Montage, and loss to the Government.

---

[1] The defense does not object to the calculation of the Guidelines range that is stipulated in the plea agreement—a calculation which the defense reaffirmed during the sentencing proceeding and again on page 2 of its PSR objections letter. The defense does, however, object to (among other things) where *within* the stipulated Guidelines range the applicable gain/loss is.

3

4. **PSR ¶ 31**

The defense asks the Court to strike the full existing paragraph, which states:

> The loss to the Government is at least approximately $917,820. This is the amount that Montage was able to raise its bid, due to SALEHI's providing confidential inside information.

For the reasons outlined above, and in the Government's sentencing and fine letters, the existing paragraph is accurate, relevant, and supported by the record. This defense objection should be overruled.

By contrast, the defense's proposed paragraph decouples the defendant's crime from its intended, actual, foreseeable, and immediate effects. Specifically, the defense proposes the following language: "Although actual loss has not been established, Montage raised its bid by $917,820 after Salehi provided confidential inside information." Dkt. 25, at 2. Of course, the very purpose of Salehi and Moayedi's criminal scheme was to "grow the pie" for themselves—*i.e.*, to increase their respective financial gains. There is no other way to understand this scheme. And by successfully leveraging the inside information from Salehi, Moayedi increased his gains by at least $917,820 (by the most conservative measure)—at the direct expense of the State Department, which sought the "lowest priced, technically acceptable offer" (as noted above).

5. **PSR ¶ 38**

The Government has no objection to modifying the existing language in this paragraph so that it instead reads as follows:

> SALEHI was arrested on September 20, 2021, following her voluntary surrender. SALEHI admitted that, as a public official, she breached her duty of honest services to the U.S. State Department by providing confidential inside bidding information to a contractor. SALEHI received $60,000 in kickbacks as a result, and under the plea agreement, SALEHI stipulated to a gain/loss amount (under the U.S. Sentencing Guidelines) of between $550,000 and $1,500,000.

6. **PSR ¶ 39**

The existing paragraph reads as follows:

> The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. The Government stated that the victim is the State Department who suffered a loss of $917,820 as a result of the defendant's conduct.

The defense asks the Court to modify this paragraph in multiple respects, including deletion of the second sentence. As set forth in prior submissions and herein, the Government believes the

4

existing paragraph is accurate, factually supported, and that restitution is mandated by the MVRA. The defense objection should be overruled.[2]

### 7. **PSR ¶ 45**

The defense asks the Court to delete the second sentence of this paragraph:

> Pursuant to §§ 2C1.1(b)(2) and 2B1.1(b)(l)(H), the base offense level is increased by 14, because the gain/loss amount is more than $550,000, but not more than $1,500,000. Specifically, the loss was $1,492,820.

The defense's objection should be overruled. As demonstrated above, $1,492,820 represents a conservative estimate of Montage's gain from this scheme. However, the Government respectfully requests that the Court replace the word "loss" with "gain" in the second sentence of this paragraph.

### 8. **PSR ¶ 111**

The defense asks the Court to strike the entirety of this paragraph:

> **Statutory Provisions**: Pursuant to 18 U.S.C. §3663A, restitution in the amount of $917,820 shall be ordered in this case and is owed to the victim, who is the State Department.

For the reasons stated above, the Government believes that this paragraph is accurate as written, factually supported, and we respectfully submit that restitution is required by law. If the Court

---

[2] The Government recognizes that the Court disagreed with the Government's position at sentencing, as it ordered no restitution. However, there is currently a pending (provisional) request from the Government to reopen restitution. If the Court were to sustain the existing fine and not reopen restitution, then the Government respectfully requests that the Court simply add the following sentence to the existing language in ¶ 39: "The Court declined to order restitution on the facts of this particular case." This language is appropriate, in part, to clarify that any finding was based on this specific record. (As the Court is aware, charges are currently pending against Moayedi in connection with the same conspiracy. *See* 22 Cr. 188 (JSR).)

disagrees, then the Government respectfully asks the Court to clarify that the Government sought restitution, but that the Court declined to order restitution on this particular record.

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York

By:           /s/          
      Michael D. Neff / Louis A. Pellegrino
      Assistant United States Attorneys
      (212) 637-2107/2617

cc:     Jonathan N. Halpern, Esq. (via ECF)